Filed 10/5/15  Certified for publication 11/4/15 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re SADIE S. et al., Persons Coming Under the Juvenile Court Law. | |
| FRESNO COUNTY DEPARTMENT OF SOCIAL SERVICES,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>JIMMIE S.,<br><br>Defendant and Appellant. | F070288<br><br>(Super. Ct. Nos. 11CEJ300086-2, 11CEJ300086-3 & 11CEJ300086-4)<br><br>**OPINION** |

APPEAL from a judgment of the Superior Court of Fresno County.  Jane Cardoza, Judge.

Seth F. Gorman, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel C. Cederborg, County Counsel, and Amy K. Cobb, Deputy County Counsel, for Plaintiff and Respondent.

Father Jimmie S. appeals from a judgment entered pursuant to Welfare and Institutions Code section 366.26,[1] selecting tribal customary adoption (TCA), as the permanent plan for his children, Sadie, Tyler and Savannah. Father contends that the juvenile court erred in affording the TCA order full faith and credit because the Indian tribe at issue did not have subject matter jurisdiction and he was denied procedural due process. We find no merit to his contentions and affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

The Fresno County Department of Social Services (department) filed a section 300 petition on May 2, 2011, alleging Sadie and Tyler were at risk of harm due to mother and father's ongoing domestic violence.[2] Notice was provided to the juvenile court indicating the children were of Indian heritage pursuant to the Indian Child Welfare Act of 1978 (ICWA) (25 U.S.C. § 1901 et seq.). The children were detained and jurisdiction scheduled for May 31, 2011.

The Northfork Rancheria of Mono Indians of California (Tribe),[3] in response to ICWA notification, filed two resolutions on June 21, 2011—one stating Sadie and Tyler were Indian children and that the Tribe would intervene in the case and another requesting that Sadie and Tyler be placed with paternal grandmother, Gay R. At the contested jurisdiction hearing on June 21, 2011, the department recommended that Sadie

---

[1]    All further statutory references are to the Welfare and Institutions Code unless otherwise stated.

[2]    Another child, S.O., was involved in the early stages of the case, but she was returned to her father, Chad O., who was subsequently awarded full custody. The children's mother is not a party to this appeal.

[3]    The official name of the Tribe is identified as "Northfork Rancheria of Mono Indians of California." (80 Fed.Reg. 1942, 1945 (Jan. 14, 2015).) The Tribe's official name had previously been identified as "North Fork Rancheria of Mono Indians," which is how the Tribe is listed in the caption of its TCA order applicable here. (79 Fed.Reg. 72009, 72025 (Dec. 4, 2014).)

2.

and Tyler be placed with a maternal aunt, Kristy C.,[4] because paternal grandmother did not pass the criminal background check.

At disposition on September 22, 2011, Geni Cowan, an Indian Child Welfare expert, testified via telephone that, in her opinion, the children would suffer serious emotional or physical damage if they were to continue in the care and custody of their parents, that reasonable efforts were provided the parents to prevent the removal and breakup of the family, and that the children were appropriately placed with Kristy C. The juvenile court found removal of Sadie and Tyler from mother and father necessary, placement of the children with Kristy C. appropriate, and that the children were Indian children within the meaning of ICWA and the Tribe.

At the six-month review hearing on April 19, 2012, the juvenile court terminated services for mother, finding reasonable services had been offered but that her progress was minimal and she failed to reunify within the six-month statutory timeframe. Services for father were continued. A 12–month review hearing was set.

In the meantime, a section 300 petition was filed alleging mother and father's newborn daughter, Savannah S., born in May 2012, was prenatally exposed to drugs. Savannah was detained at birth and subsequently placed with Sadie and Tyler in the home of Kristy C.

On February 14, 2013, after numerous continuances waiting to receive responses from various tribes noticed in regards to Savannah, the juvenile court sustained jurisdiction on Savannah. The juvenile court terminated father's reunification services as to Sadie and Tyler and set a section 366.26 selection and implementation hearing for them.

---

[4] The spelling of the maternal aunt's name in the record varies, including Christy C., Kristy C., Kristi C., and Kristie C. We will refer to her as Kristy C.

3.

The department, in its report prepared for the October 30, 2013 disposition hearing on Savannah, stated father was "actively engaged in culturally appropriate services as offered at the Sierra Tribal Consortium, also known as Turtle Lodge," and recommended reunification services be provided him for Savannah. The report prepared for an interim hearing for Sadie and Tyler recommended continuing the case for 180 days to develop a TCA plan and home study. On October 31, 2013, the juvenile court ordered reunification services be provided father for Savannah, but denied services for mother. Within the next month, father missed several visits with the children, failed to attend Savannah's medical appointments, and failed to complete his treatment programs. Father's reunification services were terminated as to Savannah on December 19, 2013, and the matter was set for a section 366.26 hearing.

Over the course of the case, the department, the Tribe, Kristy C., and father all had fluctuating views as to what type of permanent plan would be best for the children. By the time of the July 11, 2014, section 366.26 permanent planning hearing for all three children, the department and Tribe were in agreement with the recommendation of TCA. After several objections by father to the terms of the agreement, and numerous continuances, the TCA order was afforded full faith and credit by the juvenile court on September 23, 2014.

The TCA order in the record states that the Tribal council "received and reviewed reports, declarations, pleadings and documents provided by the Tribe's ICWA representative, the parties and Social Workers from Fresno County regarding this case. The Tribal Council is knowledgeable about this matter, the parents, the children and the [TCA] parent, Kristy C[]. The case was also discussed in several executive sessions during Tribal council meetings." The order further states "the Tribe's ICWA representative, Renee Getty, has spoken to all counsel of record regarding the [TCA] and all parties have had an opportunity to provide input to the Tribe regarding the children's best interests."

In its findings, the TCA order states, "As an exercise of its inherent sovereignty, the Tribe, by and through its governing body, the Tribal Council, has the authority and jurisdiction to formally order a permanent plan of [TCA] of the children …." It further states, "The Tribe possesses the inherent authority to make decisions regarding the best interests of its children including who should provide care, custody and control of its children."

The TCA order allowed father visitation provided certain conditions were met, including that he provide satisfactory evidence to the Tribal Council that he was drug free and sober for a minimum of six months; that he may not visit if he has an outstanding warrant or is on probation; that the visits be supervised by a third party; that he must abide by the policies and procedures established by the Tribe; that, if he fails to appear at three consecutive visits, future visitation will be suspended; and, if a child does not wish to visit, the visit will not be forced upon the child.

The TCA order stated Kristy C. would be the children's "legal parent," but that the children retained their full inheritance rights from mother and father. The TCA order further stated, "All rights not specified herein shall vest with the [TCA] parent, Kristy C[]."

## DISCUSSION

At issue in this appeal is the TCA order. Father is primarily unhappy with the visitation conditions in the TCA order requiring that he drug test before visitation because he claims to have a medical marijuana prescription, which should be taken into consideration. Because father raises several issues relating to the TCA process, we briefly describe the purpose and process of a TCA as it is set forth in the relevant statutes. We then address father's specific contentions that the juvenile court erred in affording the TCA order full faith and credit because: (1) the order was not made in conformity with ICWA's jurisdictional requirements and (2) the order was not made in proceedings consistent with principles of constitutional due process.

5.

*TCA*

TCA has been an alternative placement plan for Indian children in California since July 2010. (Stats. 2009, ch. 287, § 12; see *In re H.R.* (2012) 208 Cal.App.4th 751, 759 (*H.R.*).) TCA "is an alternative to a standard adoption and protects both the Tribe's and the child's interests in maintaining tribal membership by formalizing an adoption by an individual selected by the Tribe without terminating parental rights." (*In re A.M.* (2013) 215 Cal.App.4th 339, 348.) The Legislature provided for TCA's in part because:

> "'[T]he termination of parental rights which is currently a prerequisite to adoption of a child is "totally contrary to many tribes' cultural beliefs and it is, in fact, associated with some of the most oppressive policies historically used against tribes and Indian people …[.]" By contrast, historically and traditionally, most tribes have practiced adoption by custom and ceremony. In addition, the termination of parental rights can disrupt the child's ability to be a full member of the tribe or participate fully in tribal life.'" (*H.R.*, *supra*, at p. 761.)

In a TCA, the adoptive parents may be ordered to provide the child with opportunities to participate in tribal culture. (See *id.* at p. 757.)

Section 366.24 sets forth the procedures to institute a TCA as an alternative permanent plan for Indian children.[5] First, the assessment report for the selection and implementation hearing must address the TCA option. (§§ 366.21, subd. (i)(1)(H), 366.24, subd. (b).) If the tribe decides that TCA is the appropriate alternative, the tribe or its designee conducts a home study prior to approval of the TCA placement. (§ 366.24, subd. (c)(1), (2) & (3).) This assessment and the TCA order from the tribe should be completed and filed with the juvenile court prior to the selection and implementation hearing. (§§ 366.21, subd. (i)(1)(H), 366.24, subd. (c)(6).) However, if necessary, the juvenile court may continue the selection and implementation hearing to permit the tribe

---

[5] Rules of Court addressing TCA also became effective in July 2010. (Cal. Rules of Court, rules 5.708(g)(3), 5.715(b)(5), 5.720(b)(4), 5.722(b)(3), 5.725(d)(1), (d)(2)(C)(vi), (d)(8)(C), (e)(2), (e)(4).)

6.

to complete the process.  (§ 366.24, subd. (c)(6).)  The child, birth parents, or Indian custodian and the TCA parents and their counsel may present evidence to the tribe regarding the TCA and the minor's best interest.  (§ 366.24, subd. (c)(7).)  Once the juvenile court affords full faith and credit to the TCA order, the child is eligible for TCA placement.  (§ 366.24, subd. (c)(8).)  After the order has been afforded full faith and credit, the TCA parents file an adoption petition.  (§ 366.24, subd. (c)(12).)  Following required reports to the court, a period of supervision, and a final decree of adoption, the TCA parents have the same rights as any other adoptive parent and the court terminates jurisdiction over the child.  (§ 366.24, subd. (c)(12), (13) & (14).)

Consideration of TCA is not required under ICWA, but it is required by state law enacted pursuant to ICWA's authorization to states to provide a higher standard of protection than the rights provided under ICWA.  (*In re G.C.* (2013) 216 Cal.App.4th 1391, 1400.)  The requirement that the court afford the TCA order full faith and credit does not place a restriction on the court's discretion to select the most appropriate permanent plan.  Rather, the reference to full faith and credit provides the rationale and authorization for effecting an adoption without terminating parental rights, should the court select TCA as the permanent plan.  (*H.R.*, *supra*, 208 Cal.App.4th at p. 765.)  Normally adoption cannot be effected unless and until parental rights are terminated.  (See, e.g., Cal. Rules of Court, rule 5.725(g) ["The rights of all parents—whether natural, presumed, biological, alleged, or unknown—must be terminated in order to free the child for adoption."].)  By giving full faith and credit to the TCA order, a legal basis is created for recognizing the TCA despite the failure to terminate parental rights.  (*H.R.*, *supra*, at p. 765.)

### 1.	*Did the juvenile court err in affording the TCA order full faith and credit because the Tribe lacked subject matter jurisdiction?*

Father contends the juvenile court erred in affording the TCA order full faith and credit because it was not made in conformity with ICWA's jurisdictional requirements.

Specifically, father argues that the TCA order was not an order or judgment entitled to full faith and credit because "the Tribe did not duly exercise subject matter jurisdiction prior to the initiation of the dependency proceedings under 25 U.S.C. section 1911(a), or by transfer under 25 U.S.C. section 1911(b)." In essence, father contends, "the Tribe should not be entitled to control the juvenile proceedings and scope of the court's orders without first exercising that jurisdiction in conformity with the jurisdictional requirements of the ICWA." We disagree with father's interpretation of the statutes at issue.

This issue involves a matter of statutory interpretation, which we review independently. (*Dwayne P. v. Superior Court* (2002) 103 Cal.App.4th 247, 254.)

A "'child custody proceeding,'" as that term is used in the ICWA, refers to proceedings for foster care placement, termination of parental rights, preadoptive placement, and adoptive placement. (25 U.S.C. § 1903(1); *In re Junious M.* (1983) 144 Cal.App.3d 786, 790.) In furtherance of the legislative purpose, the ICWA grants an Indian tribe exclusive jurisdiction over any such proceeding involving an Indian child who resides or is domiciled within its reservation (25 U.S.C. § 1911(a)). If the Indian child is not domiciled or residing within the reservation, the state court proceeding is transferred to the tribe, absent good cause to the contrary, upon petition of either parent, Indian custodian or Indian child's tribe (25 U.S.C. § 1911(b)). Once an action is transferred to a tribal court, the state court loses all power to adjudicate the matter. (See, e.g., *In re M.M.* (2007) 154 Cal.App.4th 897, 913 [transfer to tribal court under 25 U.S.C. § 1911(b) deprives state court of jurisdiction over dependency case, precluding appeal from transfer order].) ICWA also entitles the tribe to intervene "at any point in the proceeding" in the state court in cases that are not transferred (25 U.S.C. § 1911(c)).

Father relies on our decision in *In re Laura F.* (2000) 83 Cal.App.4th 583 (*Laura F.*), in which we rejected mother's argument that a resolution from the Tule River Tribe stating, in essence, that "'adoption of the child is not in the interest of the child'"

8.

(*Laura F.*, *supra*, at p. 591) was entitled to full faith and credit under ICWA. The children at issue were not domiciled nor residing within any reservation of the tribe and therefore the juvenile court and the tribe had concurrent jurisdiction over child custody proceedings involving the children. (*Id.* at pp. 593–594.) However, the tribe never exercised its jurisdiction over the children. Neither mother nor the tribe petitioned the juvenile court to transfer the matter to the tribe's jurisdiction (25 U.S.C. § 1911(b)), nor did the tribe elect to intervene in the juvenile court proceedings (25 § U.S.C. 1911(c)). We held that:

> "Because there was never any effort to transfer dependency jurisdiction to the Tribe, we are hard pressed to imagine how the Tribe's resolution could have amounted to a judgment or other enforceable order. Thus, we have concluded the resolution was neither a judgment nor other order entitled to res judicata or collateral estoppel effect in the juvenile court under the ICWA's full faith and credit provision." (*Laura F.*, *supra*, at p. 594.)

We find father's reliance on *Laura F.* misplaced. First, *Laura F.* involved a tribal resolution, not a TCA order. In fact, the case was decided in August 2000, almost 10 years before the enactment of TCA legislation.

Second, father has provided us with no authority that the Tribe was required to petition the juvenile court to transfer the proceedings to the Tribe's jurisdiction (25 U.S.C. § 1911(b)) in order for the juvenile court to afford full faith and credit to the TCA order. In fact, the plain language of section 366.24 addressing the purpose and process of TCA's indicates otherwise. As noted, *ante*, if the Indian child is a dependent of the juvenile court and the tribe determines that TCA is the appropriate alternative, the tribe or its designee conducts a home study prior to approval of the TCA placement. (§ 366.24, subd. (c)(1), (2) & (3).) This assessment and the TCA order from the tribe are then completed and filed with the juvenile court prior to the selection and implementation hearing. (§§ 366.21, subd. (i)(1)(H), 366.24, subd. (c)(6).) If the juvenile court determines that TCA is in the child's best interests, it then affords full faith and credit to

9.

the TCA order, and the child is eligible for TCA placement. (§ 366.24, subd. (c)(8).) After the order has been afforded full faith and credit, the TCA parents file an adoption petition. (§ 366.24, subd. (c)(12).) Following required reports to the juvenile court for a period of supervision and a final decree of adoption, the TCA parents have the same rights as any other adoptive parent and only then does the juvenile court terminate jurisdiction over the child. (§ 366.24, subd. (c)(12), (13) & (14).) Thus, plainly, juvenile court jurisdiction extends throughout the proceedings and does not terminate until a final decree of adoption is awarded.

"When statutory language is clear and unambiguous there is no need for construction and the courts should not indulge in it. [Citation.]" (*In re Alicia S.* (1998) 65 Cal.App.4th 79, 89–90.)

Further, as expressed in "All County Letter No. 10-47" issued by the California Department of Social Services (CDSS) on October 27, 2010 (All County Letter):[6]

> "TCA is a permanency option for any 'Indian Child' (as defined in ICWA) whose tribe wants to pursue TCA as a permanency option. Under ICWA, and the state laws implementing ICWA, an Indian child's tribe does not need to formally intervene in a case in order to be entitled to make representations to the agency and the court as to the appropriate permanent plan for that child. (See the California Rules of Court, Rule 5.534 (i)(2)[.)]" (CDSS, All County Letter No. 10-47 (Oct. 27, 2010) § 3.4, p. 12 <http://www.cdss.ca.gov/lettersnotices/entres/getinfo/acl/2010/10-47.pdf> [as of Oct. 5, 2015].)

We therefore reject father's contention that the juvenile court erred in affording the TCA order full faith and credit because the Tribe "did not duly exercise subject matter jurisdiction prior to the initiation of the dependency proceedings under 25 U.S.C. section 1911(a), or by transfer under 25 U.S.C. section 1911(b)."

---

**6**     Assembly Bill 1325 (2009-2010 Reg. Sess.) provides that "the Department of Social Services may implement and administer the applicable provisions of this act through all-county letters or similar instruction from the director until such time as the regulations are adopted." (Stats. 2009, ch. 287, § 26.) No such regulations have yet been adopted.

### 2. Did the juvenile court err in affording the TCA order full faith and credit because the tribal orders were made in violation of due process?

Father also alleges the juvenile court erred in affording the TCA order full faith and credit because he was not given an adequate opportunity to be heard on the terms of the TCA order addressing visitation, violating his procedural due process. We find no merit to father's contention.

### *Procedural background*

Over the course of the case, the department, the Tribe, Kristy C., and father all fluctuated on what type of permanent plan would be best for the children. By the time of the July 11, 2014, section 366.26 permanent planning hearing, the department and the Tribe were in agreement with the recommendation that TCA was the appropriate permanent plan. Father's counsel agreed that father would prefer a TCA option to straight adoption. Mother's counsel asked for a continuance to consider the TCA option, although counsel acknowledged a TCA would be in mother's favor.[7]

At the continued section 366.26 hearing on July 21, 2014, father submitted on the TCA, but had some issues with the terms of the order, particularly concerning visitation and drug testing. Father's counsel stated that father "may" "change his mind … with a hair test they're recommending," because that would prevent father from "having to call everyday and having to worry about getting to the testing place everyday and having that issue everyday having to try to deal with that." Following an off-the-record discussion in chambers, the juvenile court indicated that "[e]veryone seems to agree that we can … go forward with [the] permanent plan." But the court also noted uncertainty as to what its role was in the details of the agreement:

> "The details of that may be subject of a contest yet on father's part that the Court should hear some detailed argument as to best interest of the children in that [TCA] and the Court, I believe, we may need briefing. I would invite it but if not that's fine. The Court has full power to modify the

---

[7]    Presumably because a TCA does not terminate parental rights.

details of the agreement. Fine. There may be subject powers in the Court. Maybe within tribal jurisdiction or maybe something the parties have to resolve themselves as a detail[] the Court would ordinarily not be involved. [¶] This Court documents the permanent plan and the details of that with the tribal involvement. Maybe something outside the purview of this Court. I'm happy to hear it, have it argued, and resolve those if they cannot be resolved outside my direct supervision or decision making."

The juvenile court found TCA was the appropriate permanent plan and continued the section 366.26 hearing to allow for the statutory time requirements.

At the continued section 366.26 hearing on September 2, 2014, the juvenile court stated the hearing was for the purpose of the "actual terms" of the TCA. The Tribe's representative provided the juvenile court with the TCA order. Counsel for the department stated that it was his understanding that, if the juvenile court provided full faith and credit to the order, the juvenile court could not modify the order "as it is enacted by a different legal entity that indicates that it recognizes the[ir] authority to do so." The juvenile court stated that it was likely to accept the order as is, but would still review it to see if there was anything in it that "we have had agreement to modify as a group."

Counsel for the department argued that father's disagreement with the terms should not impact the juvenile court's decision, alerting the juvenile court to section 366.24, subdivision (c)(11), which states, "Prior consent to a permanent plan of [TCA] of an Indian child shall not be required of an Indian parent or Indian custodian whose parental relationship to the child will be modified by the [TCA]."

Counsel for father, who was not present, asked for a continuance to allow father "some time to actually look at what the orders were going to be." The request for a continuance was denied. Counsel for father then stated she did have "something else" she needed to say. After a discussion off the record, the juvenile court noted father was now present and stated:

"There's no agreement from dad as to the terms and conditions of the [TCA] and agreement and there's details the Court chooses not to disturb. There is a request to continue the matter further. I'm told [father's] issue of

12.

> sobriety vis-à-vis medical marijuana has already been addressed. The Court does not find good cause to continue but I'm also told by the Department that the law requires greater degree of notice. Additional addendum report technically before all is in order and therefore the Court's hands are bound to find good cause to continue this matter. The Court will find what it needs for the second addendum report time wise."

The juvenile court then continued the hearing for the additional statutorily required days, pursuant to section 366.26, subdivision (c)(6).

At the continued section 366.26 hearing on September 23, 2014, the juvenile court again considered the TCA order. Counsel for the department argued that as long as father, who was objecting to the visitation recommendations in the TCA, was "given notice within the [T]ribe and opportunity to be heard regarding the matter, that the Court must give full faith and credit to the order and then proceed forward with the [TCA]." When the juvenile court asked what was meant by "an opportunity to be heard," counsel said he was "not certain whether father can contest that matter here.… At the very least, the Court has the right to consider it." But, counsel asserted, father "has had ample opportunity" to be heard because the case had been continued several times and father had been in contact with the Tribe.

Counsel for father acknowledged father had received adequate notice, but did not think there had been a formal hearing within the Tribe in which father was allowed input. While father's counsel stated that father had had telephone contact with the Tribe, counsel objected to the contention that he had had an opportunity to be heard "within the [T]ribe before this [TCA] order was made." In particular, father's counsel objected to the proposed order concerning visitation conditions, specifically drug testing requirements regarding marijuana (father claimed to have a medical marijuana prescription) as it would prevent him from visiting with his children. Father's counsel stated that the other terms of the order were "fine."

The representative for the Tribe stated that the Tribe did not have a "formal hearing process," but that it had had contact with father and father's mother and it had

13.

discussed father's concerns about drug testing and marijuana use. According to the representative, the Tribal council agreed that the TCA orders it was submitting "were the ones that we want."

The juvenile court then found the TCA the appropriate permanent plan and ordered that mother and father's parental rights "are … modified in accordance with the [TCA] order of the North Fork Rancheria of Mono Indians. Court is affording full faith and credit to the [TCA] orders for the children, Sadie, Tyler, and Savannah S[.]"

### *Applicable Law and Analysis*

Father argues that he was denied due process in the dependency proceedings addressing the TCA and the juvenile court therefore erred in affording the TCA order full faith and credit. We disagree.

A TCA order entered by the tribal court does not necessarily preclude a juvenile court in a dependency action regarding Indian children from selecting a different permanent plan at the contested dispositional hearing after considering the relevant evidence. But once TCA is selected as the child's permanent plan, as it was here, the juvenile court is required to give the TCA order full faith and credit. (*H.R.*, *supra*, 208 Cal.App.4th at p. 767.)

That said, section 366.24 set outs certain requirements that must be met in order for a state court to afford a TCA order full faith and credit. Subdivision (c)(7) of section 366.24 specifies:

> "The child, birth parents, or Indian custodial and the tribal customary adoptive parents and their counsel, if applicable, may present evidence to the tribe regarding the [TCA] and the child's best interest."

As evidenced, *ante*, from the recitation of the hearings dealing with the TCA, father was given an opportunity to present evidence to the tribe regarding the TCA and his children's best interests. According to the Tribe representative present at the hearing, the Tribe did not have a "formal hearing process," but it had had contact with father and

father's mother and it had discussed father's concerns about drug testing and marijuana use.[8] And, according to the representative, the Tribal council agreed that the TCA orders it was submitting "were the ones that we want."

We also note that Section 366.24, subdivision (c)(10) requires the TCA order to address the issue of visitation, but it does not guarantee birth parents a right of visitation. That section states, in pertinent part:

> "The [TCA] order shall include, but not be limited to, a description of (A) the modification of the legal relationship of the birth parents or Indian custodian and the child, including contact, *if any*, between the child and the birth parents or Indian custodian .…" (§ 366.24, subd. (c)(10), italics added.)

Visitation, therefore, was not something guaranteed father in a TCA.

And section 366.24, subdivision (11) provides: "Prior consent to a permanent plan of [TCA] of an Indian child shall not be required of an Indian parent or Indian custodian whose parental relationship will be modified by the [TCA]." Thus, there was no need for father's approval prior to the juvenile court affording the TCA order full faith and credit.

In considering the applicability of a TCA order at this juncture in the dependency proceeding, it should be remembered that where, as here, reunification services have been terminated because the parents have failed to reunify, the emphasis is no longer on the parents' care, custody and control of the child, but on the child's needs for permanency and stability. (See *In re Stephanie M.* (1994) 7 Cal.4th 295, 317; see also *H.R.*, *supra*, 208 Cal.App.4th at p. 759.) Therefore, in view of the legislative determination that an Indian child's best interests normally will be best served by preserving his or her tribal connections, there being no evidence to the contrary, the juvenile court did not abuse its discretion in selecting TCA as the permanent plan.

---

[8] We also note, as stated in the All County Letter, in preparing the TCA order, the tribe "is not required to disclose the tribal customs or ceremonies used during this process." (CDSS, All County Letter No. 10-47, *supra*, § 8.1, p. 24.)

15.

We reject father's claim that the juvenile court erred in affording the TCA order full faith and credit because he was not given an adequate opportunity to be heard on the visitation terms of the TCA order.

## DISPOSITION

The judgment is affirmed.

_____
KANE, J.

WE CONCUR:


_____
HILL, P.J.


_____
GOMES, J.

16.

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re SADIE S. et al., Persons Coming Under the Juvenile Court Law. | |
| FRESNO COUNTY DEPARTMENT OF SOCIAL SERVICES,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>JIMMIE S.,<br><br>Defendant and Appellant. | F070288<br><br>(Super. Ct. Nos. 11CEJ300086-2, 11CEJ300086-3 & 11CEJ300086-4)<br><br><br>ORDER GRANTING REQUEST FOR PUBLICATION |

As the nonpublished opinion filed on October 5, 2015, in the above entitled matter hereby meets the standards for publication specified in the California Rules of Court, rule 8.1105(c), it is ordered that the opinion be certified for publication in the Official Reports.

KANE, J

WE CONCUR:

GOMES, J.

HILL, P.J.